POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant
Sreenadha Vattam and Proposed Co-
Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN BAILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ULTRAGENYX PHARMACEUTICAL INC., EMIL D. KAKKIS, and ERIC CROMBEZ,<br><br>Defendants. | Case No.: 3:26-cv-01097-JD<br><br>MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br><u>CLASS ACTION</u><br><br>Date: May 21, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11 – 19th Floor |

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.    ARGUMENT ............................................................................................................. 5

   A.    VATTAM SHOULD BE APPOINTED LEAD PLAINTIFF ............................... 5

      1.    Vattam Has the "Largest Financial Interest" ............................................ 6

      2.    Vattam Satisfies Rule 23's Applicable Requirements ............................ 12

   B.    VATTAM'S SELECTION OF COUNSEL SHOULD BE APPROVED ............. 14

   C.    THE COMPETING MOTIONS SHOULD BE DENIED ................................... 14

III.    CONCLUSION ....................................................................................................... 15

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. Bird Glob., Inc.*,
No. 222CV08406ODWAGRX, 2023 WL 3814040 (C.D. Cal. June 2, 2023) ..............*passim*

*Blake v. Canoo, Inc., et al.*,
No. 21-cv-2873-FMO (C.D. Cal.)........................................................................ 14

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
No. 1: 17 CV 1958, 2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) ........................... 2, 4, 7, 11

*Cortina v. Anavex Life Scis. Corp.*,
No. 15-CV-10162 (JMF), 2016 WL 1337305 (S.D.N.Y. Apr. 5, 2016)....................... 6, 7, 11

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................ 8

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................... 9

*Foster v. Maxwell Techs., Inc.*,
No. 13-CV-00580-BEN-RBB, 2013 WL 5780424 (S.D. Cal. Oct. 24, 2013)........................ 9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002).................................................................................... 5, 12

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)..................................................................... 4, 8, 11

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................... 3, 4, 9

*In re Zoom Sec. Litig.*,
No. 20-CV-02353-JD, 2021 WL 1375854 (N.D. Cal. Apr. 12, 2021) .................................. 8

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .........................................*passim*

*Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694 (C.D.
Cal. Apr. 26, 2001)......................................................................................... 14

*Peters v. Twist Bioscience Corp.*,
No. 5:22-CV-08168-EJD, 2023 WL 4849431 (N.D. Cal. July 28, 2023) .....................*passim*

ii

*Pio v. Gen. Motors Co.*,
    No. CIV. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ............................ 4, 7, 11

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    No. 06 CIV. 5797 PAC, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ........................ 4, 7, 11

*Ruland v. InfoSonics Corp.*,
    No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ................... *passim*

*Saye v. NIO Inc.*,
    No. 22-CV-7252 (VSB), 2022 WL 17666398 (S.D.N.Y. Dec. 14, 2022) ............................... 9

*Schueneman v. Arena Pharms., Inc.*,
    No. 10CV1959 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) .............. 3, 4, 9, 10

*Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v.*
    *Brixmor Prop. Grp. Inc.*,
    No. 16-CV-02400 (AT)(SN), 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) ............. *passim*

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

Movant Vattam[1] respectfully submits this Memorandum of Points and Authorities in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz and Holzer as Co-Lead Counsel (Dkt. No. 22); and in opposition to the competing motions of: (i) Jim Haw ("Haw") (Dkt. No. 16); and (ii) Jay Arthurs ("Arthurs") (Dkt. No. 19).

## I.     PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Ultragenyx securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the Action who also satisfies Rule 23's applicable requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Vattam, who possesses the largest financial interest in this litigation of any movant as assessed under the *Lax* factors, first articulated in the seminal decision in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), and widely adopted by courts nationwide as guidance for assessing financial interest pursuant to the PSLRA's lead plaintiff appointment provisions. *See Peters v. Twist Bioscience Corp.*, No. 5:22-CV-08168-EJD, 2023 WL 4849431, at *3 (N.D. Cal. July 28, 2023); *Arias v. Bird Glob., Inc.*, No. 222CV08406ODWAGRX, 2023 WL 3814040, at *4 (C.D. Cal. June 2, 2023). The four *Lax* factors guiding this assessment are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Lax*, 1997 WL 461036, at *5.

---

[1] All capitalized terms herein are defined in Vattam's notice of motion and moving brief, unless otherwise indicated. *See* Dkt. No. 22.

1

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

Courts in the Ninth Circuit, including this District, routinely assess a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors. *See, e.g.*, *Arias*, 2023 WL 3814040, at \*4-6 (comparing competing movants' losses under different methodologies and weighing the difference in loss against the weight of the other *Lax* factors); *Peters*, 2023 WL 4849431, at \*6 (same). Accordingly, although courts generally emphasize the fourth *Lax* factor (approximate loss) in assessing financial interest under the PSLRA, when there is only a small difference between competing movants' claimed losses, courts generally treat those losses as roughly equal and look to the other three *Lax* factors—shares purchased, net shares purchased, and net funds expended—to determine which movant has the largest financial interest. *See, e.g.*, *Peters*, 2023 WL 4849431, at \*6 ("[T]he resultant losses are close enough that the Court would not be able to find that the fourth *Lax*[] factor favors UPR, much less to such a degree as to outweigh all other *Lax*[] factors that favor PABF."); *Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at \*1-2 (S.D.N.Y. Nov. 29, 2016) (appointing movant with lesser losses where "[t]he other factors . . . overwhelmingly favor" that movant); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1: 17 CV 1958, 2017 WL 6028213, at \*3 (N.D. Ohio Dec. 5, 2017) ("[T]he Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors.").

In examining all four *Lax* factors holistically, courts in the Ninth Circuit place substantial weight on the number of net shares purchased during the class period—a number that often coincides with the number of shares retained by a movant at the time of the revelation of the alleged fraud, as it does here (hereinafter, "retained shares"). This is because retained shares are the **only** shares damaged by the alleged fraud—*i.e.*, the only shares in connection with which a

plaintiff has incurred recoverable losses. *See, e.g.*, *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (appointing movant with "the greatest number of net shares purchased" because that movant "has the largest potential recovery"); *Schueneman v. Arena Pharms., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011) (finding movant with "significantly greater number of retained shares" than competing movant "has the greatest potential recovery and the greatest financial interest"); *see also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.").

The following table sets forth Vattam's financial interest as compared to that claimed by the competing movants[2]:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Loss | Retained Shares |
|--------|------------------|----------------------|--------------------|------------------|-----------------|
| Vattam | 3,000 | 3,000 | $90,716 | $23,028 | 3,000 |
| Haw | 1,960 | 1,960 | $70,624.62 | $24,505.82 | 1,960 |
| Arthurs | 961.5 | 961.5 | $32,269.88 | $10,575.81 | 961.5 |

As the above table reflects, Vattam has the largest financial interest among the competing movants under an appropriately holistic analysis that takes into account all four *Lax* factors. Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Brixmor*, 2016 WL 11648466, at *2—*i.e.*, shares purchased, net shares purchased, and net funds expended—Vattam individually leads by a significant margin with respect to **all three** of those factors, having purchased more gross and net shares and expended

---

[2] All figures in the table are taken from each movant's respective damages analysis exhibit. *See* Dkt. Nos. 16-3, 19-4, 22-3.

more in net funds than both Haw and Arthurs ***combined***.  Critically, Vattam retained ***over 1,000 more shares*** than Haw—who claims the second-largest number of retained shares—at the end of the Class Period, when the revelation of the Defendants' alleged fraud caused their respective losses, tipping the balance greatly in Vattam's favor of having the largest financial interest in this litigation.  *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999); *Ruland*, 2006 WL 3746716, at *6; *Schueneman*, 2011 WL 3475380, at *4.

With respect to the remaining *Lax* factor, approximate loss suffered—the least objective of the four *Lax* factors (*see Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014))—only one competing movant, Haw, claims a larger figure. However, the difference between Haw's alleged loss and Vattam's is marginal ($24,505.82 vs. $23,028, a difference of only $1,477.82, or 6.2%) and the Court should thus treat the competing movants' investment losses as roughly equal.  *See Arias*, 2023 WL 3814040, at *6 (finding movants "all have similar losses" where there "is only 4%" or "7%" difference); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 400, 403 (S.D.N.Y. 2006) (holding that an over 18% difference in losses was "roughly equal"); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 CIV. 5797 PAC, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (treating 2% difference in losses "as roughly equal").  Accordingly, when considering the magnitude by which Vattam leads the other movants with respect to every other *Lax* factor, he clearly possesses the largest financial interest in this litigation among the competing movants.  *See Peters*, 2023 WL 4849431, at *6; *Arias*, 2023 WL 3814040, at *6; *Brixmor*, 2016 WL 11648466, at *1-2; *TransDigm*, 2017 WL 6028213, at *3.

In addition to his significant financial interest, Vattam also satisfies the applicable requirements of Rule 23—typicality and adequacy.  Vattam's claims in this litigation are based

on the same legal theory and arise from the same events and course of conduct as those of other Class members. *See Peters*, 2023 WL 4849431, at *6; *Arias*, 2023 WL 3814040, at *7. Vattam is aware of no conflict between his interests and those of the Class, his significant financial interest gives him a sufficient stake in the outcome of this Action to ensure vigorous advocacy on behalf of the Class, and Vattam has retained qualified and experienced counsel. *See Peters*, 2023 WL 4849431, at *6; *Arias*, 2023 WL 3814040, at *8. Further demonstrating his adequacy, Vattam has submitted a detailed Declaration providing the Court with information regarding his background, and attesting to, *inter alia*, his understanding of the significance of his motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 22-6.

For the reasons set forth herein, Vattam respectfully submits that his motion should be granted in its entirety and that the competing motions should be denied.

## II.    ARGUMENT

### A.    VATTAM SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant with the largest financial interest need only make a *prima facie* showing at this stage that it satisfies the typicality and adequacy requirements of Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate representative for the Class is Vattam.

5

### 1.    Vattam Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]" *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts generally assess financial interest with reference to the four *Lax* factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *See Peters*, 2023 WL 4849431, at *3 ("In calculating a movant's financial interest, courts typically consider [the] four [*Lax*] factors[.]"); *Arias*, 2023 WL 3814040, at *4 (same); *Ruland*, 2006 WL 3746716, at *4 (same).

Courts around the country, including in the Ninth Circuit and this District specifically, have routinely assessed a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors.  *See, e.g.*, *Peters*, 2023 WL 4849431, at *6 ("[T]he resultant losses are close enough that the Court would not be able to find that the fourth *Lax*[] factor favors UPR, much less to such a degree as to outweigh all other *Lax*[] factors that favor PABF."); *Arias*, 2023 WL 3814040, at *6 (comparing competing movants' losses under different methodologies and weighing the difference in loss against the weight of the other *Lax* factors); *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) ("Given that, *at best*, the total loss factor only slightly favors Din . . . and that the two net factors heavily favor Truong, the Court finds that Truong has the largest financial interest in the relief sought by the class." (Emphasis in original.) (Internal quotation marks omitted.)).  This is, in part, because courts recognize that the first three *Lax* factors—shares purchased, net shares purchased,

and net funds expended—provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to approximate loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See Pio*, 2014 WL 5421230, at *4 ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Brixmor*, 2016 WL 11648466, at *2 ("The[ first three *Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share.").

Accordingly, with respect to the fourth *Lax* factor, approximate loss, when the difference between competing movants' claimed losses is so small as to be roughly equal, courts readily look to the other three *Lax* factors to determine which movant has the largest financial interest. *See, e.g.*, *Arias*, 2023 WL 3814040, at *6 (finding movants "all have similar losses" where there "is only [a] 4%" or "7%" difference, and looking to the other *Lax* factors); *Brixmor*, 2016 WL 11648466, at *1-2 (looking to other *Lax* factors where there was only a 16% difference between losses, even if "[i]t is undisputed that [one movant] incurred larger losses," and appointing competing movant because "[t]he other factors . . . overwhelmingly favor [it]"); *Cortina*, 2016 WL 1337305, at *2 (looking to other *Lax* factors where there was only a "roughly 3.5%" difference between losses); *SafeNet*, 2007 WL 7952453, at *2 (treating 2% difference in losses "as roughly equal" and looking to other *Lax* factors); *TransDigm Grp.*, 2017 WL 6028213, at *3

("[T]he Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors."); *see also Doral*, 414 F. Supp. 2d at 400, 403 (holding that an over 18% difference in losses was "roughly equal").

In examining all four *Lax* factors holistically, many courts, including in the Ninth Circuit, also place substantial weight on the number of net shares purchased by a movant during the class period because those shares, which (in this instance) represent shares held at the time an alleged fraud is revealed, are the ***only*** shares damaged by the corrective disclosures—*i.e.*, revelations of defendants' wrongdoing—that are responsible for the share price declines that caused the class's losses, and thus the only shares for which a plaintiff has recoverable losses. As the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, the only relief that can be sought by a plaintiff or a class in an action under the federal securities laws is recovery of the loss proximately caused by the defendant's wrongdoing. 544 U.S. 336, 338 (2005). Accordingly, under *Dura*, any recoverable losses must stem from a cognizable cause—*i.e.*, here, the revelation of the Defendants' alleged fraud through corrective disclosures. *See id*. at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Indeed, as this Court has previously noted, "'as a matter of pure logic,' it is doubtful that [an investor] could have suffered any losses in connection with [a Defendant's] disclosure [where] ***he sold his shares beforehand***." *In re Zoom Sec. Litig.*, No. 20-CV-02353-JD, 2021 WL 1375854, at *1 (N.D. Cal. Apr. 12, 2021) (emphasis added) (quoting *Dura*, 544 U.S. at 342).

Here, the only allegations pertaining to losses in this Action are that the alleged corrective disclosures on July 9 and December 29, 2025 caused Ultragenyx's stock price to decline on July 10 and December 29, 2025, respectively, after Ultragenyx provided disappointing updates regarding its Phase III clinical trials of setrusumab. *See* Dkt. No. 1 ¶¶ 4-5, 7-8, 45-48, 58- 63, 82-

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

84.[3]  By the terms of the Complaint, then, an investor would not have any recoverable losses for shares they sold prior to that information damaging Ultragenyx's stock price.  There is no other theory of damages alleged in this Action and, as such, only shares held on the dates that Ultragenyx's stock price declined—*i.e.*, the **retained shares** as of those dates (of which Vattam has more than the competing movants **combined**, as discussed in detail below)—were damaged by Defendants' wrongdoing.  *See Eichenholtz v. Verifone Holdings, Inc.,* No. C07-06140MHP, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("[L]oss causation can only be demonstrated *with respect to shares retained as of the date of the corrective disclosure*.  (Emphasis added.)); *Foster v. Maxwell Techs., Inc.*, No. 13-CV-00580-BEN-RBB, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss *if the purchaser sells the shares before the truth is revealed*."  (Emphasis added.)); *Ruland*, 2006 WL 3746716, at *6 (appointing movant with "the greatest number of net shares purchased" because that movant "has the largest potential recovery"); *Schueneman*, 2011 WL 3475380, at *4 (finding movant that "has a significantly greater number of retained shares than" a competing movant "has the greatest potential recovery and the greatest financial interest"); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."); *Saye v. NIO Inc.*, No. 22-CV-7252 (VSB), 2022 WL 17666398, at *4 (S.D.N.Y. Dec. 14, 2022) ("[S]ecurities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'" (quoting *Dura*, 544 U.S. at 345)).

---

[3] ¶¶ 83-84 of the Complaint erroneously refer to December 26, 2025, rather than December 29, 2025, as the final corrective disclosure date.  *See Ultragenyx Announces Phase 3 Orbit and Cosmic Results for Setrusumab (UX143) in Osteogenesis Imperfecta*, Ultragenyx (Dec. 29, 2025), https://ir.ultragenyx.com/news-releases/news-release-details/ultragenyx-announces-phase-3-orbit-and-cosmic-results-setrusumab.

9

Here, Vattam clearly possesses a larger financial interest in this litigation than any competing movant under a holistic *Lax*-factor analysis assessing all four factors. As the chart at p. 3 illustrates, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Brixmor*, 2016 WL 11648466, at *2—*i.e.*, shares purchased, net shares purchased, and net funds expended—Vattam leads both competing movants **combined** with respect to all three of those factors. Further, as illustrated in the chart below, Vattam **significantly** leads in those three factors when compared only to Haw—who claims the second-largest number of shares purchased, net shares purchased, and net funds expended:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended |
|---|---|---|---|
| Vattam | 3,000 | 3,000 | $90,716 |
| Haw | 1,960 | 1,960 | $70,624.62 |
| Difference (%) | *41.94%* | *41.94%* | *24.91%* |

Indeed, with respect to arguably the most important *Lax* factor, the number of net shares purchased, which correlates with a movant's potential recovery in the litigation, Vattam's 3,000 net shares of Ultragenyx common stock held at the time the Defendants' alleged fraud was revealed (*i.e.*, retained shares) significantly exceeds Haw's 1,960 retained shares—a difference of *41.94%*—tipping the balance greatly in Vattam's favor of having the largest financial interest in this litigation. *See Ruland*, 2006 WL 3746716, at *6 (appointing movant with "*the greatest number of net shares purchased*" because that movant "*has the largest potential recovery*" (emphases added)); *Schueneman*, 2011 WL 3475380, at *4 (finding movant that "*has a significantly greater number of retained shares* than" a competing movant "*has the greatest potential recovery and the greatest financial interest*" (emphases added)).

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

Only Haw can claim to lead Vattam with respect any *Lax* factor—*i.e.*, approximate loss (the least objective one).  *See Brixmor*, 2016 WL 11648466, at *2; *Pio*, 2014 WL 5421230, at *4. However, the difference between Haw and Vattam's respective losses ($24,505.82 vs. $23,028, a difference of only $1,477.82, or 6.2%) is so marginal that those losses should be considered roughly equal.  *See Arias*, 2023 WL 3814040, at *6 (finding movants "all have similar losses" where there "is only [a] 4%" or "7%" difference); *Doral*, 414 F. Supp. 2d at 400, 403 (holding that an over 18% difference in losses was "roughly equal"); *SafeNet*, 2007 WL 7952453, at *2 (treating 2% difference in losses "as roughly equal").  Accordingly, when considering Vattam's significant lead in the other three, more objective *Lax* factors (*see* chart at p. 10, *supra*) against Haw's *de minimis* lead in approximate loss, Vattam clearly has the largest financial interest in this litigation.  *See Brixmor*, 2016 WL 11648466, at *1-2 (looking to other *Lax* factors where there was only a 16% difference between losses, even if "[i]t is undisputed that [one movant] incurred larger losses," and appointing competing movant because "[t]he other factors . . . overwhelmingly favor [it]"); *Cortina*, 2016 WL 1337305, at *2 (discounting "roughly 3.5%" difference between losses where two other *Lax* factors "heavily favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *SafeNet*, 2007 WL 7952453, at *2 (treating 2% difference in losses "as roughly equal" and appointing movant with lower losses as lead plaintiff because, *inter alia*, the other *Lax* factors favored that movant); *TransDigm Grp.*, 2017 WL 6028213, at *3 (appointing movant with lower losses because "the Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *see also Doral*, 414 F. Supp. 2d at 400, 403 (holding that an over 18% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations).

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

In sum, Vattam leads by an overwhelming margin when evaluating the three more objective *Lax* factors—most critically, net shares purchased—while trailing by only a negligible margin when evaluating the least objective one, approximate loss. As such, Vattam possesses the largest financial interest in this litigation within the meaning of the PSLRA.

### 2.    Vattam Satisfies Rule 23's Applicable Requirements

In addition to possessing the largest financial interest among the competing movants in the relief sought by the Class, Vattam has also made the requisite *prima facie* showing that he satisfies Rule 23's typicality and adequacy requirements. *See Cavanaugh*, 306 F.3d at 730-31.

First, Vattam satisfies the typicality requirement of Rule 23(a)(3) because his claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Peters*, 2023 WL 4849431, at *6; *Arias*, 2023 WL 3814040, at *7. Vattam alleges, like other Class members, that the Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Ultragenyx, or by omitting to state material facts necessary to make the statements they did make not misleading. Further, Vattam, like other Class members, purchased Ultragenyx common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Ultragenyx's stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3). *See Peters*, 2023 WL 4849431, at *6; *Arias*, 2023 WL 3814040, at *7.

Second, Vattam satisfies the adequacy requirement of Rule 23(a)(4) because his interests are aligned with those of the Class, he is incentivized to prosecute this litigation vigorously on

behalf of the Class, and he has retained counsel for the Class that is qualified and competent. *See Peters*, 2023 WL 4849431, at *6; *Arias*, 2023 WL 3814040, at *8. There is no evidence of antagonism or conflict between Vattam's interests and those of the Class, Vattam's significant financial interest gives him a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, he has submitted a sworn Certification declaring his commitment to protecting the interests of the Class (*see* Dkt. No. 22-5), and he has retained counsel that is highly experienced in vigorously and efficiently prosecuting securities class actions like this Action (*see* Dkt. No. 22-7 at 1-8; Dkt. No. 22-8 at *2- 4). Vattam has further demonstrated his adequacy by submitting with his motion papers a detailed Declaration that provides information about himself, including his city and state of residence and professional and educational background, and that attests to, *inter alia*, his understanding of the significance of his motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as his readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 22-6 ¶¶ 1-7, 9-11.

*****

Because Vattam has the largest financial interest in the Action among the competing movants and otherwise satisfies Rule 23's applicable requirements, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii). To overcome the strong presumption entitling Vattam to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that he is inadequate. *Id.* § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

13

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

### B.    VATTAM'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001). The Court should interfere with a lead plaintiff's selection only when necessary to "protect the interests of the class" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). *Osher*, 2001 WL 861694, at *4.

Here, Vattam has selected Pomerantz and Holzer as Co-Lead Counsel for the Class. As their respective resumes reflect, Pomerantz and Holzer are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 22-7 at 1-8; Dkt. No. 22-8 at *2-4. Pomerantz and Holzer have history of working together on behalf of aggrieved investors in class actions under the federal securities laws, and are currently serving as Co-Lead Counsel in the Ninth Circuit in the PSLRA action *Blake v. Canoo, Inc., et al.*, No. 21-cv-2873-FMO (C.D. Cal.). Thus, the Court may be assured that by approving Vattam's selection of counsel, the members of the Class will receive the best legal representation available.

### C.    THE COMPETING MOTIONS SHOULD BE DENIED

Given that Vattam has the largest financial interest in the relief sought by the Class of any competing lead plaintiff movant, it is self-evident that no other movant can satisfy the PSLRA's first criterion for appointment as Lead Plaintiff. This fact alone mandates denial of the competing motions filed by Haw (Dkt. No. 16) and Arthurs (Dkt. No. 19).

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

## III.    CONCLUSION

For the foregoing reasons, Vattam respectfully requests that the Court issue an Order: (1) appointing Vattam as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz and Holzer as Co-Lead Counsel for the Class.

Dated:  April 20, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer*
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Counsel for Lead Plaintiff Movant
Sreenadha Vattam and Proposed Co-Lead
Counsel for the Class*

**Pro hac vice* applications forthcoming

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA
VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL;
AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD

**PROOF OF SERVICE**

I hereby certify that on April 20, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Jennifer Pafiti
Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:26-cv-01097-JD