Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
aapton@zlk.com
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel.: (415) 373-1671

*Attorneys for Lead Plaintiff Movant Jim Haw*
*and Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BAILEY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ULTRAGENYX PHARMACEUTICAL INC., EMIL D. KAKKIS, and ERIC CROMBEZ, <br><br> Defendants. | Case No. 3:26-cv-01097-JD <br><br> **JIM HAW'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF AND (2) APPROVAL OF SELECTION OF COUNSEL** <br><br> Date:  May 14, 2026 <br> Time:  11:00 a.m. <br> Courtroom:  11-19th Floor <br> Judge:  Hon. James Donato |

## I.    PRELIMINARY STATEMENT

Mr. Haw is the "presumptive" lead plaintiff. This is because he possesses the "largest financial interest" in the outcome of the litigation and has made the necessary *prima facie* showings of typicality and adequacy under Federal Rule of Civil Procedure 23. Once the lead plaintiff presumption is triggered, a competing movant can attempt to rebut it with "proof" of inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). The only remaining competing movant here, Sreenadha Vattam, does not carry his burden in this regard.[1]

Mr. Vattam argues that Mr. Haw is not the presumptive lead plaintiff. Mr. Vattam asserts that he has the largest financial interest in the Action because, compared to Mr. Haw, he claims greater shares purchased, net shares purchased, and net funds expended. *See* ECF No. 30, Mr. Vattam's Opposition Brief. This argument is misguided, as Mr. Vattam even concedes that, "courts generally emphasize the fourth *Lax* factor (approximate loss) in assessing financial interest under the PSLRA". *Id.* at p. 2. That is particularly true when, as here, the case involves multiple—and varying—disclosures of the alleged fraud. Having lost nearly $25,000 on his Ultragenyx Pharmaceutical Inc. ("Ultragenyx") investment—compared to Mr. Vattam who lost $23,028.00—there should be no dispute that Mr. Haw is the movant with the "largest financial interest" when applying the "approximate loss suffered" methodology. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Moreover, Mr. Haw has made a preliminary showing of the typicality and adequacy requirements of Rule 23, which is all that is required at this stage in the litigation. *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d. 1129, 1136 (C.D. Cal. 1999). He is typical of the other class members insofar as he acquired Ultragenyx common stock during the Class Period and was damaged as a result. Mr. Haw does not have any interests adverse to the class and, as demonstrated in the declaration accompanying his motion, he is ideally suited to serve as the lead plaintiff given his 30-year history of investing in the stock market. *See* ECF No. 16-5. Indeed, by failing to substantively oppose Mr. Haw's motion, Mr. Vattam effectively concedes that he is typical and adequate, and is thus not subject to any unique defenses. 15 U.S.C. §78u-4(a)(3)(B)(iii). Therefore, Mr. Haw should be appointed as the lead

---

[1] On April 20, 2026, movant Jay Arthurs filed a notice of non-opposition. *See* ECF No. 28.

plaintiff.

## II.    ARGUMENT

### A.    Mr. Haw Has the Largest Financial Interest.

Courts in this Circuit and around the country, including this Court, universally acknowledge that loss suffered is the most important factor in assessing financial interest under the PSLRA. *See Melucci v. Corcept Therapeutics, Inc.*, No. 19-CV-01372-LHK, 2019 U.S. Dist. LEXIS 173932, at *8-10 (N.D. Cal. Oct. 7, 2019) (favoring "approximate losses suffered" in "*Lax-Olsten* test" analysis); *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452, at *14 (C.D. Cal. Sep. 29, 2017); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("courts consider [...] the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss"); *Omdahl v. Farfetch Ltd.,* No. 19-cv-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *7 (S.D.N.Y. June 10, 2020) ("The last factor, financial loss, is the most important of the four."); *Richardson v. TVIA, Inc.,* Nos. C-06-06304 RMW, C-06-07307 RMW, 2007 LEXIS 41838, at *13-14 (N.D. Cal. Apr. 16, 2007) ("Of the Olsten-Lax factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss."); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.").

Mr. Vattam suggests that the retained shares method should be applied to determine greatest financial interest. *See* ECF No. 30, pp. 6-10. This method determines how many shares were purchased during the class period, how many shares were retained at the end of the class period, and the net loss of only those shares. *In re Lyft Sec. Litig.,* No. 19-cv-02690-HSG, 2020 U.S. Dist. LEXIS 37606, at *11 (N.D. Cal. Mar. 4, 2020). Courts in the Ninth Circuit have found that the retained shares method "works best where there is a 'relatively constant fraud premium through the class period.'" *Id*. (quoting *Mulligan v. Impax Labs., Inc.,* No. C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119, at *24 (N.D. Cal. July 2, 2013)). However, this method is not relevant to the case at hand and would lead to incorrect findings if applied.

The complaint on file alleges two corrective disclosures. The first occurred on July 9, 2025

2

when Ultragenyx disclosed that the Phase III Orbit study failed to achieve statistical significance for the second interim analysis, and that the Phase III Orbit and Cosmic studies would now be "progressing toward final analysis." *See* ECF No. 1 at ¶¶4-5 and 45-48. The second corrective disclosure occurred on December 29, 2025 when Ultragenyx disclosed that its Phase III Orbit and Cosmic Studies had not "achieved statistical significance against the primary endpoints of reduction in annualized clinical fracture rate compared to placebo or bisphosphonates, respectively." The Company attributed the study failure to a "low fracture rate in the placebo group" of Orbit and a trend that fell shy of statistical significance in Cosmic. *See* ECF No. 1 at ¶¶7-8 and 58-63. Ultragenyx's stock price declined materially in response to both disclosures. On July 10, 2025, the price of Ultragenyx's stock declined from $41.44 to $31.03 and, on December 29, 2025, the price fell from $34.19 to $19.72. ¶¶ 5, 8, 48, and 63. These partial corrective disclosures preclude the application of the "net shares" analysis, which focuses only on holdings as of the disclosure that ends the class period. As a result of these partial disclosures and the various alleged misrepresentations during the nearly three-year Class Period, the "fraud premium"—the amount by which the prices of securities were artificially inflated—likely varied over time.

As many courts have observed, shares purchased and net shares purchased—already the least important of the *Lax* factors—are even less useful analytical tools where several corrective disclosures are involved. Because a proper determination of the fraud premium goes to the merits of plaintiffs' claims, any analysis thereof is premature, and the Court should focus on approximate loss. *See Khan v. Chargepoint Holdings, Inc.*, No. 23-cv-06172-PCP, 2024 U.S. Dist. LEXIS 88645, at *9-10 (N.D. Cal. May 16, 2024) ("Because this case involves gradual disclosures that undermine the likelihood of a constant fraud premium throughout the class period, the Court will use the net losses approach to calculate the movants' financial interests."); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, *20, at *20 (N.D. Cal. Mar. 4, 2013) (looking to LIFO loss estimate rather than net shares method where multiple partial disclosures varied "fraud premium" throughout the class period); *In re Network Associates, Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (acknowledging that the net shares approach is less accurate in situations where "the amount of the 'fraud premium' varied over the course of the class period"); *Li Hong Cheng v. Canada Goose Holdings*

3

*Inc.,* No. 19-CV-8204 (VSB), 2019 U.S. Dist. LEXIS 209946, at *13-15 (S.D.N.Y. Dec. 5, 2019) (finding the retained shares methodology particularly unpersuasive given the existence of three separate disclosures throughout the class period). It is for these reasons that the "most illuminating" metric is "approximate loss, the only factor that makes no assumptions regarding the fraud premium." *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *16 (W.D. Wash. July 13, 2005).

Disregarding the well-known authority of using LIFO to determine largest financial interest, Mr. Vattam now asks the Court to decide the motions based on alternative evaluations, *i.e.*, net shares retained. This marks an abrupt change from Mr. Vattam's analysis in his opening motion papers where he focused on approximate losses suffered. "District courts across the country have uniformly disapproved of such gamesmanship in PSLRA lead plaintiff motions, whereby movants revise their loss analysis after seeing what other competing movants have submitted." *Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168-EJD, 2023 U.S. Dist. LEXIS 131228, at *12-13 (N.D. Cal. July 28, 2023); *see also City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.,* 20-cv-9132 (AJN), et al., 2021 U.S. Dist. LEXIS 21607, at *12 (S.D.N.Y. Feb. 4, 2021) ("Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs."); *Cook v. Allergn PLC,* 18 Civ. 12089 (CM), et. al., 2019 U.S. Dist. LEXIS 51962, at *9 (S.D.N.Y. Mar. 21, 2019) ("The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of Dura on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted."); *Chandler v. Ulta Beauty, Inc.,* Case No. 18-cv-1577, 2018 U.S. Dist. LEXIS 107340, at *10 n.5 (N.D. Ill. June 26, 2018) ("courts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method"); *Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303, et al., 2017 U.S. Dist. LEXIS 103799, at *7 n.4 (M.D.N.C. July 5, 2017) ("The court rejects the Gluck Group's request to 'change[ ] [its] method of valuation upon realizing [its] defeat' under normal valuation methods."); *Bodri v. Gopro, Inc.,* Case No. 16-cv-00232-JST; et al., 2016 U.S. Dist. LEXIS 57559, at *11-12 (N.D. Cal. 2016) ("Only after the parties filed their opening

4

briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology. This fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology.") (internal citations omitted). At this early juncture in the proceedings, courts compare financial interest based on the approximate loss suffered—without engaging in the complicated task of determining movant's actual damages. *See McGeev. Am. Oriental Bioengineering, Inc.,* 2:12-CV-5476-SVW-SH; 2:12-CV-5789-SVW-SH, 2012 U.S. Dist. LEXIS 196011, at *9 (C.D. Cal. Oct. 16, 2012) ("LIFO is the most appropriate technique for approximating which investor suffered the greatest losses because of Defendants' wrongdoing"). This is particularly true when, as here, the case involves numerous corrective disclosures and a varying "fraud premium" thereby making factors other than loss inappropriate as a metric of financial interest at this early stage of the case and without the benefit of expert analysis. *See Canada Goose Holdings Inc.,* 2019 U.S. Dist. LEXIS 209946, at *13-15 (finding the retained shares methodology particularly unpersuasive given the existence of three separate disclosures throughout the class period).

Because Mr. Haw "suffered greater approximate losses," he has "the largest financial interest" in this Action and should therefore be appointed as the Lead Plaintiff. *See Melucci*, 2019 U.S. Dist. LEXIS 173932, at *8-10.

**B.     Mr. Vattam Effectively Concedes That Mr. Haw is Adequate and Typical.**

Mr. Vattam's opposition brief made no argument against Mr. Haw other than pointing out that he had less of a financial interest in three of the four *Lax* factors. *See generally* Dkt No. 30 (failing to make any arguments against Mr. Haw's typicality and adequacy). By having timely filed a motion for appointment as the lead plaintiff, possessing the largest financial interest in the action, and sufficiently making a *prima facie* showing of typicality and adequacy, Mr. Haw has fulfilled the PSLRA's requirements to become the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (discussing requirements to become the "most adequate plaintiff"). Mr. Haw, therefore, is entitled to the presumption that he shall be appointed as the lead plaintiff in the Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (stating the court "shall appoint as the lead plaintiff" the "most adequate plaintiff"). Absent proof rebutting the presumption, Mr. Haw is entitled to be appointed as the lead plaintiff. *See*

5

*Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBFVBKX, 2011 U.S. Dist. LEXIS 19771, at *16 -26 (C.D. Cal. Feb. 14, 2011), *adopted*, No. CV 10-1754-VBFVBKX, 2011 U.S. Dist. LEXIS 19760 (C.D. Cal. Feb. 16, 2011) (appointing the most adequate plaintiff where competing movants failed to submit proof of unique defense).

## III.    CONCLUSION

For the foregoing reasons, Mr. Haw respectfully requests that this Court: (1) appoint Mr. Haw as Lead Plaintiff for the Class in the Action; (2) approve Levi & Korsinsky as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: April 27, 2026                          Respectfully submitted,

                                               **LEVI & KORSINSKY, LLP**


                                               */s/ Adam M. Apton*
                                               Adam M. Apton (SBN 316506)
                                               1160 Battery Street East, Suite 100
                                               San Francisco, CA 94111
                                               Tel: (415) 373-1671
                                               Email: aapton@zlk.com

                                               *Attorneys for Jim Haw, and Proposed Lead Counsel for the Class*