POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*Sreenadha Vattam and Proposed Co-*
*Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN BAILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ULTRAGENYX PHARMACEUTICAL INC., EMIL D. KAKKIS, and ERIC CROMBEZ,<br><br>Defendants. | Case No.: 3:26-cv-01097-JD<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL<br><br>CLASS ACTION<br><br>Date:  May 21, 2026<br>Time:  11:00 a.m.<br>Judge:  Hon. James Donato<br>Courtroom:  11 – 19th Floor |

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of Rule 23's typicality and adequacy requirements.  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  This presumption is rebuttable only upon "proof" that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, as discussed at length in his opposition brief (Dkt. No. 30), Vattam has a larger financial interest in this Action than Haw[1] when properly and holistically assessed with reference to all four factors articulated in the seminal decision *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Vattam leads by an overwhelming margin with respect to **all three** of the more objective *Lax* factors—*i.e.*, shares purchased, net shares purchased, and net funds expended—while trailing by only a negligible margin with respect to the least objective *Lax* factor, loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See* Dkt. No. 30 at 1-4, 6-12.  Further, Vattam retained significantly more shares than Haw did when the revelation of the Defendants' alleged fraud damaged each movant's shares, greatly tipping the balance in Vattam's favor of having the largest financial interest because, as discussed in detail in his opposition brief, shares retained when the alleged fraud was revealed (*i.e.*, net

---

[1] Initially, one other putative Class member, Jay Arthurs ("Arthurs"), filed a similar competing motion.  *See* Dkt. No. 19.  On April 20, 2026, Arthurs filed a notice stating his non-opposition to the competing motions.  *See* Dkt. No. 28.

shares purchased) are the *only* shares in connection with which a plaintiff can claim recoverable investment losses. *See* Dkt. No. 30 at 2-4, 8-10.

In opposing Vattam's motion, Haw claims to be the movant with the largest financial interest based solely on his marginally larger alleged loss. *See* Dkt. No. 29 at 1, 3-4. Haw argues that approximate loss is outcome-determinative in assessing his and Vattam's respective financial interests, and that *any* difference—even the negligible difference at issue here—between competing movants' losses is meaningful. *See id.* at 3-4. He also argues that net shares purchased is a less useful measure of financial interest in *this* particular instance—thereby implicitly conceding that this factor generally *does* carry weight—because the Complaint in this Action alleges more than one corrective disclosure. As such, Haw asserts that there is no constant "fraud premium"—*i.e.*, the amount by which the price of the relevant securities was inflated by the Defendants' fraud—during the Class Period, making a comparison of the movants' respective net shares purchased unhelpful in assessing financial interest. *See id.* at 4. These arguments fail.

*First*, while courts frequently emphasize approximate loss in assessing financial interest under the PSLRA, courts around the country, including in the Ninth Circuit and this District specifically, routinely do assess a lead plaintiff movant's financial interest holistically with reference to *all four Lax* factors where, as here, the competing movants have roughly equal losses (as set forth in detail in Vattam's opposition brief). *See* Dkt. No. 30 at 2, 4, 7-8, 11.

*Second*, the number of net shares purchased by a movant (*i.e.*, the number of shares retained when the alleged fraud came to light) *is* a critical measure of financial interest here. Although there are two corrective disclosures alleged in the Complaint, such that, in theory, the fraud premium in this case may have varied during the overall Class Period, *both Vattam and Haw purchased and held all of their shares through one and the same corrective disclosure*,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL - 3:26-cv-01097-JD

with no intervening Class Period sales.  *See* Dkt. Nos. 16-2, 16-3, 22-3, 22-5.  As such, any variability in the fraud premium over the Class Period more generally is irrelevant to any comparison of the financial interests of these two movants specifically.  Haw's argument about theoretical variability in fraud premium is thus inapplicable to the facts before the Court.

In sum, Vattam claims the largest financial interest in this litigation when properly assessed with reference to all four *Lax* factors and, most critically, retained shares.  Further, Haw has not contested Vattam's typicality or adequacy within the meaning of Rule 23, nor argued that he is subject to any disqualifying unique defenses.  As such, any such arguments have been waived.  *See H & H Pharms., LLC v. Cambrex Charles City, Inc.*, 836 F. App'x 619, 620 (9th Cir. 2021) ("[A]rguments presented for the first time in a reply brief are waived.").

For the reasons set forth herein, Vattam respectfully submits that the Court should grant his motion in its entirety and deny Haw's competing motion.

## II.    ARGUMENT

### A.    LOSS IS NOT THE ONLY RELEVANT FINANCIAL INTEREST METRIC

Contrary to Haw's assertions, Vattam's significant lead with respect to the first three *Lax* factors—shares purchased, net shares purchased, and net funds expended—***does*** outweigh Haw's nominal lead with respect to the approximate loss *Lax* factor.

As discussed more fully in Vattam's opposition brief (*see* Dkt. No. 30 at 2-3, 6-8), courts, including in the Ninth Circuit and this District specifically, routinely assess a lead plaintiff movant's financial interest holistically with reference to **all four** *Lax* factors.  *See, e.g.*, *Arias v. Bird Glob., Inc.*, No. 222CV08406ODWAGRX, 2023 WL 3814040, at *4-6 (C.D. Cal. June 2, 2023) (comparing competing movants' losses under different methodologies and weighing the difference in loss against the weight of the other *Lax* factors); *Peters v. Twist Bioscience Corp.*,

No. 5:22-CV-08168-EJD, 2023 WL 4849431, at *6 (N.D. Cal. July 28, 2023) (same). Courts are particularly inclined to do so where, as here, there is only a nominal difference between the claimed investment losses of competing movants. *See, e.g.*, *Peters*, 2023 WL 4849431, at *6 ("[T]he resultant losses are close enough that the Court would not be able to find that the fourth *Lax*[] factor favors UPR, much less to such a degree as to outweigh all other *Lax*[] factors that favor PABF."); *Arias*, 2023 WL 3814040, at *6 (finding movants "all have similar losses" where there "is only [a] 4%" or "7%" difference, and looking to the other *Lax* factors). This is, in part, because courts recognize that the first three *Lax* factors provide a more objective assessment of a lead plaintiff movant's financial interest than approximate loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See, e.g.*, *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) ("declin[ing] the invitation to ignore all but the fourth *Lax* factor" because "the first three factors provide the most objective measurement of a movant's stake in the litigation" and loss "is heavily dependent on the method applied and numbers chosen to calculate losses"); *Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at *2 (S.D.N.Y. Nov. 29, 2016) (same).

Here, there is a nominal difference of merely 6.2% between Haw and Vattam's respective losses ($24,505.82 vs. $23,028). *See Arias*, 2023 WL 3814040, at *6 (finding movants "all have similar losses" where there "is only 4%" or "7%" difference); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 400, 403 (S.D.N.Y. 2006) (holding that an over 18% difference in losses was "roughly equal"). Given the movants' functionally equivalent losses, the Court should look to the other three *Lax* factors in comparing Haw and Vattam's respective financial interests. *See*

*Arias*, 2023 WL 3814040, at *6 (looking to the other *Lax* factors where movants "all have similar losses"); *Brixmor*, 2016 WL 11648466, at *1-2 (same).

As discussed more fully in his opposition brief, Vattam significantly leads Haw with respect to shares purchased (3,000 shares vs. 1,960 shares, a difference of ***41.94%***), net shares purchased (same), ***and*** net funds expended ($90,716 vs. $70,624.62, a difference of ***24.91%***). *See* Dkt. No. 30 at 3-4, 10. When considered alongside the nominal 6.2% difference in their alleged losses, Vattam clearly possesses a larger financial interest in this litigation than Haw. *See Peters*, 2023 WL 4849431, at *6 ("[T]he resultant losses are close enough that the Court would not be able to find that the fourth *Lax*[] factor favors UPR, much less to such a degree as to outweigh all other *Lax*[] factors that favor PABF."); *Brixmor*, 2016 WL 11648466, at *1-2 (appointing movant with lesser losses where "[t]he other factors . . . overwhelmingly favor" it); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1: 17 CV 1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) ("[T]he difference in the approximate losses does not overcome the combined weight of the first three factors.").

Nevertheless, Haw asserts that his marginally larger loss is outcome determinative, citing the general proposition that "[c]ourts in this circuit consider approximate loss suffered as the most important factor." Dkt. No. 29 at 3. However, as discussed above, courts readily look to the other *Lax* factors when competing movants' losses are roughly equal. The cases that Haw cites in ostensible support of his position do not find otherwise. In *Waterford Twp. Police v. Mattel, Inc.*, the court found a movant had the largest financial interest where "[t]he ***first three*** [*Lax* factor] measurements clearly point to [him] as having a larger financial interest" and he ***also*** alleged a larger loss. No. 17CV04732VAPKSX, 2017 WL 10667732, at *5 (C.D. Cal. Sept. 29, 2017) (emphasis added). Similarly, in *Melucci v. Corcept Therapeutics Inc.*, the court found that

"*[t]hree of the four* [*Lax*] factors weigh heavily in favor of [an investor group] and strongly suggest that [it] is the purported class member with the largest financial stake in the litigation", while "[t]he remaining factor, net shares purchased, weigh[ed] in favor of [another movant]."  No. 19-CV-01372-LHK, 2019 WL 4933611, at *4 (N.D. Cal. Oct. 7, 2019) (emphasis added).  Accordingly, "[c]onsidering *all four factors together*," the court found that the movant group had the largest financial interest.  *Id.* (emphasis added).  In *Knox v. Yingli Green Energy Holding Co.*, the court expressly considered all four *Lax* factors in evaluating the financial interests of two competing movants, each of whom led with respect to two of the four factors, and appointed the movant who had claimed the largest investment losses and purchased the most shares.  136 F. Supp. 3d 1159, 1163-65 (C.D. Cal. 2015).  None of the foregoing cases resulted in the denial of a motion by a movant who overwhelmingly led with respect to *all three* of the more objective *Lax* factors and claimed only a marginally smaller investment loss than another movant.

Other cases cited by Haw are similarly inapposite.  In *Hall v. Medicis Pharm. Corp.*, there was no dispute as to which movant claimed the larger financial interest (as there is here), and a competing movant's claim to "most adequate plaintiff" status relied instead on "the fact that it is an institutional investor" and Rule 23 considerations, despite claiming a smaller loss than another movant.  No. CV08-1821PHX-GMS, 2009 WL 648626, at *2-6 (D. Ariz. Mar. 11, 2009).  Similarly, in *Ferrari v. Gisch*, an institutional investor movant group "concede[d] that . . . [a competing retail investor group] . . . ha[s] the greatest financial interest in the litigation", but nonetheless argued that the court should appoint it instead based on other considerations.  225 F.R.D. 599, 606 (C.D. Cal. 2004); *see also id.* at 605 ("As both [movants] note, . . . the [retail investor group] has . . . established the largest financial interest in the litigation.").  Here, unlike in *Hall* and *Ferrari*, financial interest is the *only* point in contention, and Vattam is *not* asking the

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL - 3:26-cv-01097-JD

Court to discount the PSLRA's largest financial interest factor in favor of a solely Rule 23-based analysis. Moreover, in *Ferrari*, the institutional investor movant group asked the court to discount an approximate 12% difference in loss, and the movant with the larger loss **also** led with respect to at least one other *Lax* factor. *See id.* at 604-05. Here, however, there is only a roughly 6% difference in the losses at issue—only half of the margin at issue in *Ferrari*—and it is undisputed that Vattam leads Haw with respect to **all** other *Lax* factors.

In sum, Vattam clearly possesses a larger financial interest than Haw under an appropriately holistic *Lax* factor analysis considering all four factors. Moreover, as detailed below, Vattam's significant lead with respect to arguably the most important *Lax* factor, the number of net shares purchased, tips the balance greatly in his favor of having a larger financial interest than Haw, irrespective of a varying fraud premium during the Class Period.

### B.    THE NET-SHARES-PURCHASED *LAX* FACTOR WEIGHS HEAVILY IN VATTAM'S FAVOR IN ASSESSING FINANCIAL INTEREST

The number of net shares (*i.e.*, shares retained when the Defendants' alleged fraud came to light) that each movant purchased is critical to determining their respective financial interests in this litigation because this factor correlates with a movant's potential recovery in the litigation. As the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, the only relief that can be sought by a plaintiff or class in an action under the federal securities laws is recovery of the loss proximately caused by the defendant's wrongdoing. 544 U.S. 336, 338 (2005). Accordingly, under *Dura*, any recoverable losses must stem from a cognizable cause—here, the revelation of Defendants' alleged fraud (Dkt. No. 1 ¶¶ 4-5, 7-8, 45-48, 58-63, 82-84). *See id.* at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Following *Dura*, many courts, including in the Ninth Circuit and this District specifically, have placed substantial weight on a movant's net shares purchased in

evaluating financial interest. Because those shares, held at the time an alleged fraud is revealed, are the **only** shares damaged by the corrective disclosures—*i.e.*, revelations of defendants' wrongdoing—they are the only shares in connection with which a plaintiff may pursue recovery of investment losses. *See, e.g.*, *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (appointing movant with "the greatest number of net shares purchased" because it "has the largest potential recovery"); *Schueneman v. Arena Pharms., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011) (finding movant with "significantly greater number of retained shares" than competing movant "has the greatest potential recovery and the greatest financial interest"); *In re Critical Path, Inc. Sec. Litig*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (net shares purchased is "determinative" of financial interest). Here, Vattam purchased 3,000 net shares of Ultragenyx common stock during the Class Period (*see* Dkt. No. 22-3), while Haw purchased only 1,960 net shares (*see* Dkt. No. 16-3)—a difference of **41.94%**. As such, Vattam "has the greatest potential recovery and the greatest financial interest." *Schueneman*, 2011 WL 3475380, at *4.

Haw argues that net shares purchased is not a useful measure of financial interest in this Action because of supposed variability in the "fraud premium"—*i.e.*, the amount by which the price of the relevant securities was inflated by the Defendants' fraud—during the Class Period. This argument fails. An Class Period variability in the fraud premium is irrelevant to any determination of the competing movants' financial interests, because ***both Vattam and Haw purchased and held all of their shares through one and the same corrective disclosure***, with no intervening Class Period sales. With respect to Haw and Vattam's investments, then, there was no variability whatsoever in the fraud premium. Rather, the fraud premium was the same for both

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL - 3:26-cv-01097-JD

movants, meaning that each's retained shares were damaged by the same amount when the truth emerged. *See* Dkt. Nos. 16-2, 16-3, 22-3, 22-5.

There are only two corrective disclosures alleged in the Complaint—one on July 9, 2025, and one on December 29, 2025. *See* Dkt. No. 1 ¶¶ 4-5, 7-8, 45-48, 58-63. During the Class Period, Vattam purchased *all* of his Ultragenyx shares in September and October 2025 (*see* Dkt. No. 22-5 at *4), whereas Haw purchased *all* of his Ultragenyx shares in December 2025 (*see* Dkt. No. 16-2 at *3). As such, neither Vattam nor Hall held any Ultragenyx shares as of the July 9, 2025 corrective disclosure date. Further, neither Vattam nor Hall sold any of their shares prior to the December 29, 2025 corrective disclosure date. *See* Dkt. No. 16-2 at *3; Dkt. No. 22-5 at *4. As such, *all* of Vattam and Hall's Ultragenyx shares were damaged *solely* as a result of the stock price decline following the December 29, 2025 corrective disclosure date. Accordingly, there are *no* facts before the Court to support the theory that there was any variance with respect to the fraud premium impacting *Vattam and Hall's* respective Class Period transactions. Rather, the alleged artificial price inflation affecting *their* respective Class Period transactions in Ultragenyx common stock was removed solely by the December 29, 2025 corrective disclosure, as opposed to being gradually removed over the course of multiple corrective disclosures. The chart below compares the extent to which each movant's Ultragenyx shares were damaged by revelation of the Defendants' alleged fraud:

| Movant | Shares Purchased | Net Shares Purchased | Impact of Corrective Disclosure #1: (July 9, 2025 closing price - July 10, 2025 closing price) x Number of Shares Held | Impact of Corrective Disclosure #2: (December 26, 2025 closing price - December 29, 2025 closing price) x Number of Shares Held |
|---|---|---|---|---|
| Vattam | 3,000 | 3,000 | ($41.44 - $31.03) x 0 = $0 | ($34.19 - $19.72) x 3,000 = *$43,410* |
| Haw | 1,960 | 1,960 | ($41.44 - $31.03) x 0 = $0 | ($34.19 - $19.72) x 1,960 = *$28,361.20* |

9

Vattam's shares were damaged in the amount of $43,410, whereas Haw's shares were only damaged by $28,361.20—a difference of *41.94%*—when the constant fraud premium (price inflation) affecting each movant's shares was removed following the revelation of Defendants' alleged fraud on December 29, 2025, giving Vattam a greater stake in the outcome of this litigation. (Neither movant, however, incurred any damages in connection with the July 2025 disclosure, as neither held any Ultragenyx shares at that time.) Accordingly, Vattam having purchased more net shares than Haw weighs heavily in his favor in the financial-interest determination. *See Ruland*, 2006 WL 3746716, at *6.

## III.   THE COURT SHOULD APPROVE VATTAM'S SELECTION OF LEAD COUNSEL

Finally, Vattam most respectfully submits that the Court should approve his selection of Pomerantz as Lead Counsel for the Class. Pomerantz remains cognizant of the failures that occurred before this Court in the action *In re TerraVia Holdings, Inc. Sec. Litig.*, 3:16-cv-06633 (N.D. Cal.). As set forth in detail in its submissions in the action *Elkhodari v. Unicycive Therapeutics, Inc.*, 3:25-cv-06923 (N.D. Cal.) ("*Unicycive*")—in which the Court saw fit to appoint Pomerantz as Lead Counsel—those failures were due to a highly specific set of circumstances centering on the actions and omissions of a single attorney who no longer works at Pomerantz. The firm remains committed to the practices described in *Unicycive* to ensure that no comparable failures occur in this or any other litigation for which the firm is responsible.

## IV.   CONCLUSION

For the foregoing reasons, Vattam respectfully requests that the Court issue an Order: (1) appointing Vattam as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz and Holzer as Co-Lead Counsel for the Class.

Dated:  April 27, 2026                                    Respectfully submitted,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL - 3:26-cv-01097-JD

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer*
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Counsel for Lead Plaintiff Movant Sreenadha Vattam and Proposed Co-Lead Counsel for the Class*

\*Pro hac vice* applications forthcoming

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL - 3:26-cv-01097-JD

## PROOF OF SERVICE

I hereby certify that on April 27, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF SREENADHA VATTAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL - 3:26-cv-01097-JD